Lester GLEASON, II, Appellant–Plaintiff,

v.

Charles E. BUSH, Jr., M.D., John M. Gossard, M.D., and Lafayette Home Hospital, Inc., Appellees–Defendants.

No. 79A02–9505–CV–258.

Court of Appeals of Indiana.

May 20, 1996.

Cynthia S. Rose, York, Schrager, Baxter, James & Rose, Indianapolis, for appellant.

Larry Robert Fisher and Laura L. Bowker, Stuart & Branigin, Lafayette, for Charles E. Bush, Jr., M.D. and Lafayette Home Hospital, Inc.

Kevin Charles Murray, Todd J. Kaiser, and Sandra Boyd Williams, Locke Reynolds Boyd & Weisell, Indianapolis, for John M. Gossard, M.D.

## OPINION

KIRSCH, Judge.

Lester Gleason II appeals the dismissal of his proposed complaint for medical malpractice against Doctor Charles Bush, Jr., Doctor John Gossard, and Lafayette Home Hospital (collectively "Providers"). Gleason raises several issues which we restate as:

> Does IC 27–12–10–13(a), which requires a medical review panel to render its expert opinion within 180 days of panel formation, mandate dismissal of a proposed complaint for medical malpractice when the plaintiff fails to file an evidentiary submission prior to the expiration of such time?

We reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On May 10, 1991, Lester Gleason II broke his right arm. Doctor Bush performed surgery on Gleason's arm and treated Gleason in the post-operative period. Gleason became dissatisfied with the progress of his healing and consulted with Doctor Gossard, who performed a second surgery on Gleason's arm at Lafayette Home Hospital. During the course of his treatment, a cast was allegedly placed too tightly on Gleason's arm, resulting in further complications and additional surgeries.

On May 5, 1993, Gleason filed a Proposed Complaint with the Department of Insurance alleging medical malpractice against the Doctors. Pursuant to the Indiana Medical Malpractice Act (Act),[1] the parties agreed to the formation of a Medical Review Panel (Panel). On February 21, 1994, Leroy Freiherr was selected as Chairman of the Panel. That day, Freiherr informed the parties of the schedule by which they were to submit evidence to the Panel: Gleason's initial submission was due April 7, 1994; the Providers' submission was due by May 23, 1994; and, Gleason's optional reply was due June 7, 1994. Freiherr notified the parties in writing of this schedule and informed them of the Panel's duty under IC 27–12–10–13(a) to render an expert opinion within 180 days from February 21, 1994, which was by August 22, 1994.

On March 29, 1994, Gleason's counsel sent a letter to the Panel and to counsel for the Providers, requesting a thirty-day extension for the submission of his evidence. Gleason's counsel did not receive a response. On May 9, 1994, Gleason's counsel again sent a letter to the Panel and the Providers' counsel, requesting another thirty-day extension in order to submit medical evidence. In the letter, Gleason's counsel asked Freiherr to advise him of any objections to his second request for an extension of time. Neither Freiherr nor the Providers objected or replied.

On July 7, 1994, approximately two months after the second requested extension, Gleason's counsel sent Freiherr a third letter stating that she would submit the medical evidence upon receipt of a notarized affidavit from Gleason. After sending this last letter, Gleason's counsel did not submit any medical evidence to the Panel. The deadline for the Panel to render an expert opinion passed on August 22, 1994, without any further correspondence from the parties.

---

1. IC 27–12–1–1 to 27–12–81–2.

Sixty days after the deadline elapsed, the Providers filed Motions to Dismiss Gleason's Proposed Complaint. The trial court held a hearing to consider the motions, during which time the parties presented evidence concerning the reasons for the Panel's failure to render its expert opinion. The court granted the Motions to Dismiss on January 27, 1995. In doing so, the court stated in its Findings of Fact and Conclusions of Law:

"9. The Plaintiff now argues that he has good cause for not making his submission of evidence as provided in the schedule because he is a twenty year old male living solely on Social Security Disability benefits as a result of the impairment of his right arm, has no permanent residence and has no financial means to maintain a personal telephone service. He has changed mailing addresses approximately three times in the preceding nine months and has, at times, been unavailable by telephone except by messages left with friends. The plaintiff does not have his own means of transportation but must depend on others for transportation.

\* \* \* \* \* \*

"11. The Act mandates that the Medical Review Panel render its expert opinion within 180 days of the selection of the last member of the Panel. I.C. 27–12–10–13(a).

\* \* \* \* \* \*

"13. The Medical Malpractice Act, Indiana Code 27–12–10–23, provides that a party is subject to mandate or appropriate sanctions for failure to act as required by the Act.

"14. The Indiana Court of Appeals has held that a medical malpractice action pending before the Department of Insurance may be dismissed if the plaintiff fails to make a submission of evidence to the Medical Review Panel prior to the running of the 180 day period required in I.C. 27–12–10–13(a). *See Blackden v. Kaufman,* 611 N.E.2d 663 (Ind.Ct.App.1993); *Ground v. Methodist Hospital of Indiana, Inc.,* 576 N.E.2d 611 (Ind.Ct.App.1991); *Galindo v.*

*Christensen,* 569 N.E.2d 702 (Ind.Ct.App. 1991)."

Gleason now appeals.

## DISCUSSION AND DECISION

IC 27–12–10–13(a) provides, "(a) The panel shall give its expert opinion within one hundred eighty (180) days after the selection of the last member of the initial panel. . . ." Gleason asserts that the 180–day time frame under this section was not intended to be a statute of limitation. We agree.

■ Our primary goal in construing statutes is to determine the intent of the legislature. *Lowell Health Care Center v. Jordan,* 641 N.E.2d 675, 677 (Ind.Ct.App. 1994), *trans. denied.* In doing so, we examine statutory provisions within the context of the entire act, not in isolation. *Id.* Therefore, we will adopt the construction which sustains the Act, fulfills its purpose, and renders all parts thereof harmonious. *Id.*

The Act requires that before a claim for medical malpractice may be brought before an Indiana court, such claim must first be presented to a medical review panel and an opinion must be rendered by such panel. IC 27–12–8–4.[2] A panel is created to conduct a rational inquiry into the nature and extent of a patient's injuries so that it may render an expert opinion on whether the evidence shows that the defendants did or did not act within the appropriate standards of care. IC 27–12–10–1; IC 27–12–10–22; *Bonnes v. Feldner,* 642 N.E.2d 217, 220 (Ind.1994). The panel is given 180 days to complete its task. IC 27–12–10–13(a).

With respect to the panel's role in the Act's statutory scheme, our supreme court stated:

"The statute contemplates that the panel will function in an informal and reasonable manner. It is guided by a trained lawyer who presumptively will not deny to each party a reasonable opportunity to present its evidence and authorities. The scope of the panel's function is limited. It does not conduct a hearing or trial and does not

2. Exceptions to this requirement may be found in IC 27–12–8–5, which permits a claimant to forgo the panel process upon written agreement to all parties to the litigation, and IC 27–12–8–6, which permits a claimant to forgo the panel process for damage claims less than $15,000.

render a decision or judgment. There is, therefore, no reason to mandate that the statute relegate burdens of proof or production and to otherwise specify procedures applicable in hearings and trials." *Johnson v. St. Vincent Hosp.*, 273 Ind. 374, 404 N.E.2d 585, 596 (1980).[3]

Further evidence of the informal role of panels is seen in the procedures for the selection of its members. For example, after filing a proposed complaint, the parties must wait a minimum of twenty days before requesting the formation of a panel. IC 27–12–10–2. IC 27–12–10–2 does not, however, provide a maximum time after which a party may not request a panel formation. Thus, there is an indefinite period of time between filing proposed complaints and requesting panel formation.

Even after the request for panel formation is submitted, further delay may be engendered by the actual selection process of the panel members. *See* IC 27–12–10–4. In the event that parties dispute member selections, or the selectees elect not to serve, the Act permits additional time to fill positions. *See id.;* IC 27–12–10–10; IC 27–12–10–12. The Act does not mandate a specific time limit after the request for panel formation within which a panel must be formed and ready to review the evidence. Thus, the legislature has provided flexible procedures for selecting panel members consistent with the panel's informal function.

Once a panel is formed, it must review the evidence presented by the parties and render its expert opinion within 180 days. IC 27–12–10–13(a). However, subsections (1) and (2) of IC 27–12–10–13(a) provide the panel an extra ninety days to complete its task in the event a panel member is removed, or, if a replacement member is selected more than ninety days from the selection of the last original panel member.

When the panel does not give its opinion within 180 days, the statute does not mandate dismissal or act as an absolute bar to litigants. Rather, IC 27–12–10–13(b) provides, "If the panel has not given an opinion within the time allowed under subsection (a), the panel shall submit a report to the commissioner, stating the reasons for the delay." Based on the language of subsection (b), and from the preceding discussion, we conclude that our General Assembly envisioned there would be cases in which the panel, due to circumstances beyond either parties' control, would not be able to render its opinion in accordance with IC 27–12–10–13(a). Consequently, instead of mandating the automatic dismissal of claims, the Act provides the flexibility for panels to explain the circumstances surrounding such delays. Therefore, as contemplated by the Act, IC 27–12–10–13(b) allows the parties a reasonable opportunity to present medical evidence. *See Johnson,* 404 N.E.2d at 596.

In several previous cases, we have addressed the issue of whether trial courts had abused their authority in dismissing proposed complaints for medical malpractice for a plaintiff's failure to make a timely submission. *See Leonard C. Jones v. Antolio G. Wasserman,* 656 N.E.2d 1195 (Ind.Ct.App. 1995); *Blackden v. Kaufman, M.D.,* 611 N.E.2d 663 (Ind.Ct.App.1993); *Ground v. Methodist Hosp. of Indiana,* 576 N.E.2d 611 (Ind.Ct.App.1991); *Galindo v. Christensen,* 569 N.E.2d 702 (Ind.Ct.App.1991). We affirmed the dismissal of the plaintiff's proposed complaints in *Jones, Blackden,* and *Ground.* In *Galindo,* we noted that the trial court possessed the authority to dismiss proposed complaints, but reversed and remanded so that a hearing could be held to determine whether there was good cause for failing to comply with the Act. *Id.* at 706.

In resolving those cases, we recognized that the panel had a statutory duty to render its opinion within 180 days after the selection of its last member. *See, e.g., Jones,* 656 N.E.2d at 1196; *see also* IC 27–12–10–13(a). Furthermore, implicit in the panel's duty to render an opinion was the parties' duty to

---

**3.** We note that this informality often leaves the parties, practitioners, panel members, and trial courts uncertain as to the proper procedural course. In the present case, panel chair Freiherr neither granted, nor denied, Gleason's request for extensions of time. *Record* at 59. Rules providing for such procedures, even though informal, may help avoid not only such uncertainty, but actions such as this.

submit evidence according to the schedule set by the panel. *Jones,* 656 N.E.2d at 1196–97. Finally, we noted that failure on the part of any party or panel member to comply with the requirements of the Act subjected them to judicial sanction, often the dismissal of proposed complaints. *Id.; see also* IC 27–12–10–14.

In each of such cases, however, the plaintiffs failed to demonstrate good cause for their failure to make a timely submission. In *Ground,* for example, the plaintiff failed to make a submission or even to reply to the panel chair's repeated requests for tender of the submission. 576 N.E.2d at 612–13. Similarly, in *Blackden,* the plaintiffs failed to submit evidence after receiving an extension of time and notification from the panel chair that it would be their last extension. 611 N.E.2d at 664–65. Finally, in *Jones,* the plaintiff did not submit evidence after the panel chair made a second schedule for the submission of evidence in response to the plaintiff's failure to comply with the initial schedule. 656 N.E.2d at 1195–96.

■ We hold today that the Act's 180–day time frame, alone, is neither a statute of limitation, nor the functional equivalent of a statute of limitation. Therefore, if a panel should be unable to comply with IC 27–12–10–13(a) because of plaintiff's failure to make a timely submission, that does not automatically trigger the imposition of sanctions on either parties or panel members. Instead, the panel must submit an explanation to the commissioner explaining the delay and attempt to expedite the process in a reasonable manner. *See* IC 27–12–10–13(b). The defendant may seek dismissal or other sanction by initiating a court action pursuant to IC 27–12–10–14.

Our holding does not depart from our previous decisions in *Jones, Blackden, Ground,* and *Galindo,* and nothing in this opinion should serve as support for parties or panel members who are dilatory in upholding the letter and spirit of the Act. We recognize that the 180–day time frame for panels to render expert opinions imposes a duty on parties to submit evidence in accordance with the schedule set by the panel chairman. We further recognize that dismissal of proposed complaints is an appropriate sanction for failure to comply with the provisions in the Act. Courts may not impose sanctions, however, where a party has established good cause. *See* IC 27–12–10–14; *see also Galindo,* 569 N.E.2d at 706.

Here, the trial court may have been within its discretion in dismissing Gleason's complaint. It acted properly by holding a hearing and permitting both parties to present evidence concerning the Doctors' motions to dismiss. We do not affirm the court's holding, however, because we are unable to determine whether the trial court dismissed Gleason's complaint because Gleason did not establish good cause for failing to submit his medical evidence or in the belief that the Act mandated dismissal with expiration of the 180–day time period. Accordingly, we remand this action to the trial court for determination of whether Gleason established good cause for failure to make a timely submission.

Reversed and remanded for proceedings not inconsistent with this opinion.

FRIEDLANDER and STATON, JJ., concur.