# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**LANCE D. CLINE**
**JILL M. BRACKEN-EMERSON**
Cline Farrell Christie & Lee, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES:

**EDNA M. KOCH**
**MARILYN A. YOUNG**
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JOHN H. MOONEY, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF JOSEPH S. MOONEY, DECEASED, <br><br> Appellant-Plaintiff, <br><br> vs. <br><br> ANONYMOUS M.D. 4, ANONYMOUS M.D. 5, and ANONYMOUS HOSPITAL, <br><br> Appellees-Defendants below, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> No. 32A04-1208-CT-414 |

APPEAL FROM THE HENDRICKS SUPERIOR COURT
The Honorable Stephenie LeMay-Luken, Judge
Cause No. 32D05-1202-CT-23

**June 12, 2013**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

## STATEMENT OF THE CASE

John H. Mooney, as Special Administrator of the Estate of Joseph S. Mooney, Deceased ("Mooney"), appeals the trial court's order dismissing his proposed complaint for damages, with prejudice, with respect to defendants Anonymous Hospital, Anonymous M.D. 4, and Anonymous M.D. 5 (collectively "the family care physicians") in this medical malpractice action. Mooney presents two issues for our review:

1. Whether the trial court abused its discretion when it dismissed Mooney's proposed complaint for damages pursuant to Indiana Code Section 34-18-10-14.

2. Whether the trial court had jurisdiction to dismiss Mooney's proposed complaint for damages pursuant to Trial Rule 41(E).

We reverse.

## FACTS AND PROCEDURAL HISTORY

On November 30, 2007, Mooney filed his proposed complaint for damages with the Indiana Department of Insurance alleging that the family care physicians and Anonymous M.D. 1, Anonymous M.D. 2, Anonymous M.D. 3, and Anonymous Group, LLC (collectively "the cardiologists")[1] committed medical malpractice that caused Joseph's injuries and his ultimate death. In December 2007 and January 2008, the cardiologists and family care physicians, respectively, submitted written discovery requests to Mooney. On January 23, 2008, Mooney's counsel, Lance Cline, wrote to counsel for the family care physicians, Marilyn Young, indicating that "it would take several months for [Mooney] to respond to discovery requests." Appellant's App. at 126. In fact, Mooney's responses were not submitted until approximately two years later.

---

[1] The trial court did not dismiss Mooney's proposed complaint for damages with respect to the cardiologists. However, the trial court's order is a final judgment pursuant to Trial Rule 54(B).

In the meantime, in July 2009, the parties agreed that Robert Strohmeyer would serve as chairperson of the medical review panel ("the Panel"). And in August 2009, Strohmeyer wrote the parties a letter stating:

> Thank you for asking me to serve as panel chairman. I would be pleased to serve. I will not strictly enforce the time deadlines for making panel nominations[2] unless I hear from you to the contrary. I understand that in some cases the parties desire to complete early discovery before making nominations. Nominations are normally due within fifteen (15) days after selection of the panel chairman. Please make any strike of a nominee in a timely fashion or request additional time to consider the nominee if additional time is needed.
>
> Once the panel is formed and the submission schedule is set, please make written request[s] for additional time to complete a submission if additional time is needed. The parties' submissions should be sent to me, and I will send the submissions to the panelists when all of the submissions have been completed. I look forward to receiving your nominations or a request for striking panels if you desire to go directly to striking panels.

Id. at 141 (emphasis added).

On March 26, 2010, counsel for cardiologists, Peter Pogue, wrote to the other attorneys stating that he would "like to begin panel formation in this matter." Id. at 143. And on April 8, Cline responded in relevant part as follows:

> I have a substantial amount of discovery that I want to conduct in this case before submitting evidence to a Medical Review Panel. Because of my current calendar and because I know it is going to probably be difficult to juggle the calendars of three attorneys and several different physicians to cooperatively schedule depositions in this case, I suspect that it is going to be many months before the depositions that I need to take will be concluded in this case.
>
> Because I am reasonably certain that it is going to take many months to complete necessary discovery in this case, I am reluctant to begin the Panel formation process at this time. I acknowledge the right of your client

---

[2] Under the Medical Malpractice Act, the parties first choose a chairman of the medical review panel and then they choose two members to serve on the panel, and those two members choose the third member.

3

to request formation of a Medical Review Panel at this time. Consequently, I do not believe that I have a formal basis to object to that request. However, I would like to recommend that we cooperate with each other and postpone the formation of the Panel for a period of time. In the alternative, I have no objection to proceeding with the selection of a Panel chairperson at this time, but I will ask any Panel chairperson selected to either delay selection of the physician members of the Panel until the defendants' depositions are completed or to grant reasonable extensions of the 180[-]day rule so that the defendants' depositions can be completed, and my clients can have ample time to get written reports from expert witnesses and reasonably prepare their submissions.

I am not trying to unreasonably delay the resolution of this case. I am only trying to protect my clients and prevent a situation from occurring where my clients, due to scheduling difficulties, are not given enough time to complete the discovery that they are entitled to obtain in this case before having to submit written evidence to a Medical Review Panel because of the 180[-]day rule. I would like to propose that we agree, in advance, to some reasonable framework for allowing reasonable and adequate discovery in the case. I will await further word from you and Marilyn or Edna on my proposal and concerns.

Id. at 144-45 (emphases added).

On April 16, Young wrote to Cline and Pogue and reminded them that they had already appointed Strohmeyer to serve as chairperson, but that "[t]his case has been moving so slowly that no one has nominated to the panel." Id. at 146. Young continued,

With respect to [Cline]'s suggestion of a reasonable frame-work to allow discovery, I note that it took over two years to obtain answers to our written discovery requests. Although I certainly understand how busy attorneys can be, I would prefer to move this case along a little more quickly. Therefore, I suggest we begin formation of the medical review panel and agree to a reasonable extension of the 180-day deadline if necessary.

Id. (emphasis added).

Thereafter, on January 12, 2011, Young sent a second set of written discovery requests to Mooney. In particular, Young sought the name(s) of the pharmacy or pharmacies where Joseph had filled prescription medications from 1995 until his death in

4

2005 and copies of any pharmacy records. Mooney's responses to those discovery requests were not timely, and Young wrote several letters to Cline seeking those responses. Cline advised Young that Joseph's family was having difficulty coming up with the requested information.

In the meantime, on January 13, 2011, Cline wrote to Young and Pogue regarding possible dates for deposing their clients. Cline indicated that he preferred to depose Pogue's clients, the cardiologists, first, and he offered sixteen dates in March for those depositions. Young responded the next day and indicated that she would be available on four of the offered dates. Pogue never responded to Cline's letter.[3]

On April 8, Young wrote a letter to Cline stating as follows:

> We would like to get this case moving forward. We have begun formation of the medical review panel, with Bob Strohmeyer having been selected as panel chairman. With respect to the composition of the medical review panel, we request that at least one of the panelists be a family practitioner who has experience in an immediate care setting. It appears that at least one cardiologist should be on the panel. If a cardiologist and family physician are selected as the first two panelists, perhaps they can decide whether the third panelist should be a family practitioner or a cardiologist. Please let me know your thoughts regarding composition of the medical review panel. By copy of this letter to Peter Pogue, we ask for his input as well.

> * * *

> By letter dated January 13, 2011, you indicated that you wanted to complete some depositions, and you provided dates in March. By letter dated January 14, 2011, I responded with my availability, but I have heard nothing further. If you intend to take depositions, please provide additional dates because the dates that were previously provided have all passed.

---

[3] In his brief on appeal, Cline states that his paralegal routinely followed up written requests for deposition dates with phone calls to Pogue's office, to no avail. Young does not dispute Cline's averment on this point.

Id. at 157. And on April 13, Strohmeyer sent an email to Cline, Young, and Pogue and stated that "[u]nless [he] receive[d] an objection to Marilyn's proposal by April 22, 2011," he would prepare the striking panels. Id. at 160. On April 21, Cline sent an email to Strohmeyer, Young, and Pogue stating as follows:

> I agree that we need to keep this case moving forward. My client has answered several sets of written discovery. I need to schedule and take multiple depos[itions] in this case, at least 5 and possibly more, before being in a position to obtain written opinions from expert witnesses that I will need before I can write a submission brief for my client. I will send out a letter to defense counsel tomorrow (if I have a secretary here—she is in the hospital at the present time) requesting dates for the depos[itions]. Based upon past experience in other cases, it is probably going to take many months to get the depos[itions] concluded. That will be due to the busy schedules of everyone involved and the attempt made to accommodate everyone's calendar. I will need at least 2 months after the last depo[sition] is concluded to obtain the necessary written reports from expert witnesses and probably another month or two after that to get a submission brief written.
>
> I have no objection to beginning the process to select the physician members of the panel at this time. I just don't want to get painted into a corner at a later time with the argument that the panel has been formed for 180 days and we have no panel opinion which is almost certainly going to be the case if the panel gets fully formed in the near future. I would appreciate an acknowledgement from you and defense counsel that it may become necessary to extend (not waive) the 180[-]day rule for this case in the future depending on what happens. Without that acknowledgement, it is my position that we should delay the selection of the physician members of the panel until the necessary depos[itions] have been taken on the case. We could then promptly form the panel and have a realistic chance of getting a panel opinion within 180 days of the panel formation. I simply want to avoid having the very unrealistic 180[-]day rule being used to prevent my client from having the time needed to fully present his claim to a medical review panel.
>
> I fully acknowledge that my calendar is always very full and that it takes me a long time to get many things done on a case. However, delays in getting things done on a case are typically not my exclusive domain. For example, I requested depos[itions] in this case in January. I have no record in my file of being given any dates for the depos[itions] by Mr. Pogue,

counsel for the physicians whose depos[itions] were requested. That is fine. I am sure that Peter is every bit as busy as I am. We just need to work together and not try to use the impractical 180[-]day rule to obtain a tactical advantage in the case.

Id. at 159-60 (emphasis added).

In response, on April 22, Strohmeyer wrote the following email to Cline, Young, and Pogue:

Counsel:

As you may know, it is my preference that selection of the panel be delayed until the parties have completed (or have nearly completed) all discovery to avoid the significant delays which occur in presenting the evidence to the panel when the parties have many months of discovery to complete, expert reports to obtain, etc. I like to move these matters along, but I must allow the parties sufficient time to complete discovery and collect the facts they desire to present to the panel. I.C. [§] 34-18-10-3(c). Depositions of the health care providers are important components of the evidence panels consider. If we move forward with panel selection now, it will be with the understanding that I will not prepare a submission schedule until the required discovery has been completed and time is afforded for the parties to share the evidence developed with their clients and experts. I have to leave it to the parties to diligently schedule and complete the discovery. If everyone agrees with this procedure (or is at least willing to live with it), I'll send striking panels composed of family practitioner[s] with experience in immediate care and cardiologists as requested by Marilyn.

Id. at 159 (emphasis added). Cline responded by email to Strohmeyer, Young, and Pogue that he agreed with Strohmeyer's proposal. Neither Young nor Pogue responded to Strohmeyer's email.

On April 25, Cline wrote a letter to Young and Pogue offering thirteen dates in May, June, and August for taking the depositions of Pogue's clients.[4] Cline also stated, "My calendar is pretty wide open for the month of November at the present time." Id. at

_____

[4] There is no dispute that Cline wanted to take the cardiologists' depositions before taking the family care physicians' depositions for strategic reasons.

7

164. Young responded and identified her availability, but Pogue never responded to Cline's letter.

On October 21, 2011, Strohmeyer wrote a letter to Cline, Young, and Pogue that read as follows:

> The panel has now been formed with Bernadette E. Aghaji, M.D., serving as the third panelist. I understand that there was discovery underway when we began panel selection. I'm assuming that the discovery has been completed. Therefore, I've prepared a submission schedule. If the discovery has not been completed, please contact me and I'll withdraw the submission schedule until the parties have completed discovery. The submission schedule is as follows:
>
> Plaintiff's submission due December 5, 2011
>
> Defendants' submissions due January 13, 2012
>
> Plaintiff's reply (if any) due February 3, 2012
>
> Please contact me if this schedule is not acceptable. The panel opinion is due by April 16, 2012.

Id. at 172 (emphasis added). On October 24, Cline wrote a letter to Strohmeyer that read as follows:

> I have received your October 21, 2011[,] letter on the above case which sets submission deadlines for the parties for the above case. You have set plaintiff's submission deadline of December 5, 2011. It is not going to be possible for me to meet a December 5, 2011 submission deadline in this case. I have a minimum of five depositions of defendants that need to be taken in the case. I wrote to defense counsel on January 13, 2011[,] and again on April 25, 2011[,] to attempt to get those depositions scheduled. As of the date that I write this letter to you, none of those depositions have been scheduled by defense counsel. Although I did receive a letter from Marilyn Young indicating certain dates she could be available for the deposition, I have heard nothing from Peter Pogue. Consequently, I cannot take the blame for the fact that those depositions have not yet been taken.

8

I am writing to Marilyn and Peter again on this date to attempt to get the depositions of their clients scheduled. Enclosed is a copy of that letter. I will keep you apprised of the scheduling of any of those depositions.

I believe that submission schedules for this case should not be scheduled until the depositions of the defendants have been completed. Once those depositions are completed, then I should be able to have my client's submission completed, trial schedule permitting, within about three months of the date of the completion of the last deposition. I will need that three[-]month period of time to obtain copies of the depositions, submit them to one or more expert witnesses for review, obtain written reports from the expert witnesses for use in my client's submission of evidence, and write my client's submission.

Id. at 173 (emphases added).

In his letter of October 24 to Young and Pogue, Cline offered fourteen dates in December 2011 and January 2012 for taking the defendants' depositions. Cline explained that due to a "very crowded trial calendar" after January, he would likely not be available thereafter until June 2012. Id. at 175. Cline also stated, "Because this is my third attempt to get the depositions of the defendant health care providers scheduled in this case, I am hopeful that we can get all five depositions scheduled on the above dates. I will appreciate your cooperation in getting those depositions promptly scheduled." Id. at 175-76.

On October 31, Young wrote to Cline as follows:

I am in receipt of your letter of October 24, 2011[,] regarding depositions. Since you want to take the depositions of [the cardiologists] prior to the depositions of [the family care physicians], I don't think I can provide you with dates for my clients until we hear about the dates for [the cardiologists]. Once I receive notice from Peter regarding dates for his clients, I will speak to [the family care physicians] and find out about their availability.

9

Id. at 177. Young did not state any objection to Cline's request to Strohmeyer that the submission schedule be postponed until discovery was completed.

However, on February 9, 2012, the family care physicians filed with the trial court their "Motion for Preliminary Determination of Law to Compel Discovery or in the Alternative to Dismiss Complaint for Failure to Comply with the Indiana Rules of Trial Procedure Pursuant to Trial Rule 41(E) and Indiana Code 34-18-11-1 et seq." and brief in support of that motion. Id. at 10. In their prayer for relief, the family care physicians asked the trial court "to order Plaintiff to answer their Second Set of Discovery Requests [which were propounded in January 2011] and to provide signed authorizations for the release of pharmacy/prescription information, or in the alternative, that this cause of action be dismissed with prejudice[.]" Id. at 15. Neither the Motion nor the brief in support thereof mentioned Cline's failure to obtain depositions to date. The trial court granted the motion to compel discovery and ordered Cline to "answer Defendants' Second Set of Discovery Requests and provide signed authorizations for release of pharmacy/prescription information within 30 days of the date of this order [February 27, 2012]." Id. at 47-48. On March 20, Cline filed Mooney's Notice of Compliance with Court's Order Regarding Discovery, advising the trial court that he had provided Young with the appropriate discovery responses.

Then, on April 16, 2012, Young wrote Strohmeyer a letter stating as follows:

According to my file, the medical review panel process in this case was stayed 18 days due to our Motion for Preliminary Determination of Law to compel Plaintiff to respond to discovery. Therefore, the 180 days would run May 3, 2012.

10

The events at issue in this case occurred in 2005, and the Proposed Complaint was filed on November 30, 2007. Plaintiff did not respond to initial discovery for over two years. The medical review panel was formed six months ago, and Plaintiff has taken no action on this case. <u>Please be advised that we do not agree to waive, or extend, the 180-day deadline.</u>

<u>Id.</u> at 181 (emphasis added).

On April 19, Cline responded with a letter to Strohmeyer:

I have received and am responding to Marilyn Young's April 16, 2012[,] letter to you on the above case. In that letter, Marilyn stated that "we do not agree to waive, or extend, the 180-day deadline" in the case based upon the misrepresentation that "plaintiff has taken no action on this case." I was disappointed to see such a knowing misrepresentation made to you by Marilyn. Please allow me to inform you, and remind Marilyn, of what has actually been occurring.

After you were selected as panel chairperson for the case but before any of the physician members of the medical review panel had been selected, I wrote to defense counsel, including Marilyn Young, and advised counsel that I was concerned about full formation of the medical review panel until we had time to conduct further discovery in the case. My concern was about the 180[-]day rule. . . .

Marilyn Young wrote to fellow counsel on April 16, 2010[,] in response to my letter and stated that:

With respect to Lance's suggestion of a reasonable framework to allow discovery, I note that it took over two years to obtain answers to our written discovery request. Although I certainly understand how busy attorneys can be, I would prefer to move this case along a little more quickly. Therefore, I suggest that we begin formation of the medical review panel and agree to a reasonable extension of the 180-day deadline if necessary.

Contrary to her April 16, 2012[,] letter to you in which she stated that she does not agree to waive or extend the 180[-]day deadline, she had previously agreed to do so, if necessary. Extending the 180[-]day deadlines in this case has become necessary, because I have not received adequate cooperation from the defendants in getting their own clients scheduled for needed depositions in this case.

11

\* \* \*

Neither defense counsel objected to any portion of your April 22, 2011[,] e-mail which informed everyone that submissions of evidence would not be due until sometime after necessary discovery was completed in the case.  As I am explaining to you in this letter, that discovery has not been completed through no fault of the plaintiff.

\* \* \*

Since I first wrote to Marilyn and Peter requesting depositions of their clients in January, 2011, the onus, burden, and responsibility has been as much upon them as it has been upon me to get the depositions scheduled.  I cannot get that task accomplished without their full cooperation.

For Marilyn to tell you in her April 16, 2012[,] letter that "plaintiff has taken no action on this case" is simply not true. . . .

I have written to Peter and Marilyn again today, for the fourth time, to attempt to get the depositions of the defendant physicians scheduled in this case.  Unfortunately, at the present time, due to my vacation and trial schedule and other pending commitments, I am not clearly available to take depositions in this case until September of this year.  If two[-]week trials that I have scheduled in July and August settle, then I will have many available dates in July and August to take the depositions.

Under the circumstances that exist, a reasonable extension of the 180[-]day deadline for the case is certainly necessary.  A long time ago, Marilyn agreed to necessary extensions of the 180[-]day deadline.  Because her own conduct has, in part, contributed to the fact that depositions of the defendant physicians have not yet been taken in the case, her present refusal to agree to an extension of the 180[-]day deadline is both hypocritical and unfair under the circumstances that exist.

I hope and presume that you will recognize the need for an extension of the 180[-]day deadline until a reasonable amount of time after the last defendant's deposition is taken . . . .  I propose that submission deadlines for the case not be scheduled until the last defendant's deposition is taken.

Id. at 184-85.  Accordingly, that same day Cline wrote a letter to Young and Pogue

offering twenty-five possible dates for the depositions.  Cline also stated that he might be

available in July or August if two cases scheduled for trial ended up settling. Cline then reminded Pogue that Cline wanted to depose Pogue's clients first. And Cline reiterated that he "never heard back from [Pogue] in response to my three previous letters" trying to get depositions scheduled. Id. at 186.

On April 24, Young responded with a letter to Strohmeyer:

Contrary to comments made by [Cline] in his letter of April 19, 2012, I have never knowingly misrepresented the status of this case to anyone. According to my file, the medical review panel was formed on October 21, 2011. According to [Cline]'s letter, he sent a letter about depositions on October 24, 2011, but did nothing further to try to get the depositions scheduled. Therefore, nothing has been accomplished since the formation of the medical review panel.

Plaintiff contends that I am responsible for part of the delay, but Plaintiff is incorrect. I responded to the letters sent by the Plaintiff about depositions; however, when Plaintiff asked for depositions, he also indicated that he wanted to take the depositions of the cardiologists prior to the depositions of my clients. I cannot force the Co-Defendant to provide dates, nor can I force the Plaintiff to proceed with a Notice of Deposition as provided by the Trial Rules. My clients are being held hostage by two other attorneys who will not take action. [Cline] also contends that I am as responsible as he for the delay. Plaintiff has a duty to prosecute his case; Defendant has no corresponding duty, and I am not responsible for the delay in this case.

When I agreed to extend the 180[-]day deadline, if necessary, I did not intend "if necessary" to mean that Plaintiff would be able to determine the timing of the depositions or delay the process for a couple of years. No attorney could reasonably interpret my statement in that manner. I specifically indicated that I would not agree to waive the 180[-]day deadline because I did not want the process to be drawn out without any time constraints.

Health care providers are only required to maintain medical records for seven years and pharmacies for five years. In addition, as time passes, memories fade, and witnesses may become unavailable. The facts of this case are already nearly seven years old, and Plaintiff now indicates that he cannot schedule depositions until September at the earliest. He has also indicated that he will need many more months to take the depositions and

13

complete Plaintiff's Submission.  The inordinate delays in this case are prejudicial to my clients; I cannot agree to any further delays.  Please be advised that if Plaintiff's Submission is not submitted by the 180[-]day deadline (May 3, 2012), I intend to file a Motion for Preliminary Determination of Law and seek relief from the Court.

Id. at 188-89 (emphasis original).

Thereafter, on May 25, the family care physicians filed their "Motion for Preliminary Determination of Law to Dismiss Plaintiff's Proposed Complaint Pursuant to I.C. § 34-18-11-1, I.C. § 34-18-10-13(a), and I.C. § 34-18-10-14 and Trial Rule 41(E) for Plaintiff's Failure to Comply with the Indiana Malpractice Act, Failure of Plaintiff to Prosecute the Case, and Failure to Comply with the 180-Day Statutory Deadline" and brief in support thereof.  Mooney filed a brief in opposition to that motion.  Following a hearing, the trial court entered the following order on July 19, 2012:

And the Court, having read the Motion, having heard oral argument, and being duly advised, now finds that the Plaintiff has failed to prosecute his case, and has failed to show good cause for failing to file his medical review panel submission within the statutory 180-day deadline and comply with the provisions of the Indiana Medical Malpractice Act, and[,] therefore, the Motion for Preliminary Determination of Law should be granted.

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Plaintiff's Proposed Complaint, pending before the Indiana Department of Insurance, is hereby dismissed, with prejudice, in its entirety, as to Defendants [Anonymous Hospital, Anonymous M.D. 4, and Anonymous M.D. 5].

Id. at 8-9.  The trial court amended that order on July 23, adding, "there being no just cause for delay, such judgment shall be a final judgment in this proceeding."  Id. at 6.  This appeal ensued.

14

**DISCUSSION AND DECISION**

**Issue One: Compliance with Indiana's Medical Malpractice Act**

Mooney first contends that the trial court abused its discretion when it dismissed his proposed complaint for damages based upon his alleged failure to comply with Indiana's Medical Malpractice Act ("the Act"). Whether a plaintiff should be sanctioned for his failure to submit evidence to the medical review panel in a timely manner is a question of law and fact that may be preliminarily determined by the trial court in the exercise of its discretion after a hearing. Galindo v. Christensen, 569 N.E.2d 702, 705 (Ind. Ct. App. 1991). In other words, decisions as to whether to dismiss a proposed complaint under the Act are reviewed for an abuse of discretion. Beemer v. Elskens, 677 N.E.2d 1117, 1119 (Ind. Ct. App. 1997), trans. denied. An abuse of discretion exists when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom. Id. at 1120.

In Ramsey v. Moore, 959 N.E.2d 246, 250 (Ind. 2010), our supreme court provided "a brief background" of the provisions of the Act relevant to this appeal:

> Before a party brings a medical malpractice action in an Indiana court, the [Act] requires that the proposed complaint be presented to a medical review panel and that the panel render an opinion.[] Ind. Code § 34-18-8-4 (2008). The chairman of the medical review panel has various powers, such as establishing a reasonable schedule for the parties' submission of evidence. Id. § 34-18-10-3(c). Furthermore, the [Act] states that "[t]he evidence in written form to be considered by the medical review panel shall be promptly submitted by the respective parties." Id. § 34-18-10-17(a).
>
> When a plaintiff fails to adhere to the submission schedule, a defendant may seek recourse in a trial court while a complaint is pending before a medical review panel. In these instances, two additional

15

provisions of the [Act] become pertinent. See Galindo v. Christensen, 569 N.E.2d 702, 704-05 (Ind. Ct. App. 1991). First, a defendant may request the appropriate trial court to "preliminarily determine an . . . issue of law or fact." I.C. § 34-18-11-1(a)(1). Second, a plaintiff "who fails to act as required by this chapter without good cause shown is subject to mandate or appropriate sanctions upon application to" the trial court. Id. § 34–18–10–14.

Thus, a defendant may file a motion with the trial court for a preliminary determination on the plaintiff's failure to adhere to the submission schedule, and the defendant may request the sanction of dismissal. See Galindo, 569 N.E.2d at 705. The court may dismiss the complaint pending before the medical review panel if the plaintiff fails to show good cause for not adhering to the submission deadline. See Beemer v. Elskens, 677 N.E.2d 1117, 1119 (Ind. Ct. App. 1997), trans. denied.

(Emphases added). Indiana Code Section 34-18-10-14 "does not permit relief when a party has failed to prosecute its case within a specified time period." Adams v. Chavez, 874 N.E.2d 1038, 1042 (Ind. Ct. App. 2007). Instead, a trial court can grant relief under Indiana Code Section 34-18-10-14 only when two conditions have been met: 1) a party, attorney, or panelist has failed to act as required by Indiana Code Chapter 34-18-10 and 2) good cause has not been shown for the failure to act. Id. at 1042-43.

Further, as we observed in Beemer:

Dismissals are generally viewed in disfavor and considered extreme remedies which should be granted only under limited circumstances. . . . The sanction of dismissal or default is obviously more drastic and severe than other available sanctions. Because the law favors the disposition of cases on their merits, the imposition of these sanctions is appropriate only under limited circumstances or in extreme situations.

677 N.E.2d at 1119. In exercising discretion as to what sanctions should be imposed when a party fails to comply with the Medical Malpractice Act, the trial court should consider whether the breach of duty was intentional or contumacious and whether prejudice resulted. Rivers v. Methodist Hosp., Inc., 654 N.E.2d 811, 815 (Ind. Ct. App.

16

1995).  A plaintiff's failure to prosecute, alone, is not a sufficient basis for relief under Indiana Code Section 34-18-10-14.  Adams, 874 N.E.2d at 1043.

Here, in their Motion for Preliminary Determination, the family care physicians sought dismissal of Mooney's proposed complaint

> due to the Plaintiff's failure to file his medical review panel submission pursuant to the schedule set out by the Medical Review Panel Chairman, failure to comply with the [Act], and failure to timely and diligently prosecute this cause of action and so that the Medical Review Panel could render its opinion within one hundred and eighty [sic] (180[-]) day statutory time limit.

Appellant's App. at 73.  And the family care physicians alleged that they were prejudiced by the delays in this case in that:

> Health care providers are required to maintain medical records for only seven years and pharmacies for five years.  If additional relevant medical care providers are discovered in this case, the medical records will likely have been destroyed.  In addition, as time passes, memories fade and witnesses may become unavailable.  The facts in this case are already nearly seven years old, and the Plaintiff has indicated that he cannot schedule depositions until September 2012, at the earliest.  He also has indicated that, after the depositions, he will require an additional, substantial amount of time to complete the Plaintiff's submission.  The delays in this case are not contemplated by the [Act] and are prejudicial to the Defendants.

Id. at 77.

First, the undisputed evidence shows that there was no submission schedule in place at the time of the family care physicians' motion for preliminary determination.  In particular, Strohmeyer's April 22, 2011, email to the parties provided in relevant part that Strohmeyer would "not prepare a submission schedule until the required discovery has been completed and time is afforded for the parties to share the evidence developed with

their clients and experts." Appellant's App. at 159. And in an October 21, 2011, letter to Cline, Young, and Pogue, Strohmeyer wrote:

> The panel has now been formed with Bernadette E. Aghaji, M.D., serving as the third panelist. I understand that there was discovery underway when we began panel selection. I'm assuming that the discovery has been completed. Therefore, I've prepared a submission schedule. If the discovery has not been completed, please contact me and I'll withdraw the submission schedule until the parties have completed discovery.

Id. at 172 (emphasis added). Following that letter, Cline promptly wrote to Strohmeyer and stated that: discovery had not yet been completed and that he still needed to schedule five depositions; he could not meet the December 5, 2011, submission deadline; and "the submission schedules for this case should not be scheduled until the depositions of the defendants have been completed." Id. at 173.

It is undisputed that neither Young nor Pogue responded in any way to either Strohmeyer's October 21 letter or Cline's follow-up letter. Accordingly, given Strohmeyer's clear and unequivocal statement in his October 21 letter that he would withdraw the submission schedule if he were advised that discovery had not yet been completed, the submission schedule was withdrawn upon Strohmeyer's receipt of Cline's follow-up letter. Indiana Code Section 34-18-10-3 provides that the panel chairman "may establish a reasonable schedule for submission of evidence to the medical review panel but must allow sufficient time for the parties to make full and adequate presentation of related facts and authorities." Thus, Strohmeyer was acting within his authority in providing more time for discovery, and neither Young nor Pogue expressed any disagreement with his decision to withdraw the submission schedule. As this court has observed, "implicit in the panel's duty to render an opinion [within 180 days of the

18

selection of the last member of the panel i]s the parties' duty to submit evidence according to the schedule set by the panel." Gleason v. Bush, 664 N.E.2d 1183, 1186-87 (Ind. Ct. App. 1996) ("Gleason I") (emphasis added). Because there was no schedule established in this case, there is no evidence that Mooney failed to comply with a submission schedule.

Moreover, to the extent the family care physicians contend that Mooney failed to comply with the Act when the Panel did not issue its opinion within 180 days of its formation, that contention is untenable. Young had agreed, at the outset, to extend the 180-day deadline "if necessary." Appellant's App. at 146. In her brief on appeal, Young asserts that that statement "presumed diligence by Mooney." Brief of Appellees at 25 (emphasis original). Young maintains that she did not agree to "allow Mooney an indefinite extension of time, during which he was not required to take any action." Id. at 26. But Young had not qualified her agreement in those terms, and the context of the correspondence among the parties shows otherwise. Again, Strohmeyer had consistently stated that he would not set a submission schedule until discovery was completed, without objection from Young. And in October 2011, Strohmeyer explicitly stated that while Cline's submission was due on December 5, 2011, "[i]f the discovery has not been completed, please contact me and I'll withdraw the submission schedule until the parties have completed discovery." Appellant's App. at 172. Cline promptly wrote to Strohmeyer, advising him that discovery had not been completed and asking him to withdraw the submission schedule, and Young, again, made no objection. Given Young's explicit agreement to extend the 180-day deadline, if necessary, together with

19

her acquiescence in Strohmeyer's decision to postpone the setting of a submission schedule until discovery was completed, Young's eleventh hour objection was not well founded.[5]

Further, while the Act provides that the panel shall issue its opinion within 180 days of the formation of the panel, that deadline is neither a statute of limitation nor the functional equivalent of a statute of limitation. See Gleason v. Bush, 689 N.E.2d 480, 482 (Ind. Ct. App. 1997) ("Gleason II"). The Act anticipates that a panel might not always be able to meet the deadline, and Indiana Code Section 34-18-10-13(b) provides that under that circumstance "the panel shall submit a report to the commissioner, stating the reasons for the delay." And, in Gleason II, this court held that a panel's failure to issue an opinion within the 180-day deadline "does not automatically trigger the imposition of sanctions on either parties or panel members." Id. at 483.

Finally, while Young consistently expressed her desire to Strohmeyer, Cline, and Pogue that she wanted to move the case along more quickly, again, she did not complain about the lack of a submission schedule, which is the panel chairman's obligation to set. While Cline could have written more letters, made more phone calls, or filed a motion to compel in an effort to get Pogue to schedule his clients' depositions sooner,[6] we cannot say that he sat idly by and did nothing, as Young characterizes his conduct. The record of correspondence shows that, from January 2011 through April 2012, Cline issued four

---

[5] That is not to say that Young had a duty to move the proceedings along. But because Strohmeyer repeatedly advised the parties of his intentions to wait to set a submission schedule until discovery was completed and expressly asked the parties to let him know if they objected to that plan, Young cannot now complain.

[6] In an affidavit he submitted to the trial court, Cline explained that he had not threatened a motion to compel against Pogue out of professional courtesy.

20

written requests to Pogue offering dozens of possible dates for the defendants' depositions, but Pogue did not respond. And Cline promptly responded to each letter sent by Strohmeyer and Young. Moreover, again, dismissals are generally viewed in disfavor and considered extreme remedies, which should be granted only under limited circumstances. Beemer, 677 N.E.2d at 1119.

Indeed, every case cited by the family care physicians in their brief on appeal in support of their contention on this issue is clearly distinguishable from the instant case. In particular, in each of the cited cases, the plaintiff failed to comply with the submission schedule set by the panel chairperson, without exception. See, e.g., Gleason, 689 N.E.2d at 482; Galindo, 569 N.E.2d at 704. Here, where Strohmeyer did not set a submission schedule and the parties acquiesced in the delay in setting a schedule for the express purpose of completing discovery, there is no basis to find that Cline violated his duty to submit evidence to the Panel on behalf of his client. Further, the evidence shows that the parties agreed to extend the 180-day deadline for the Panel's opinion. Accordingly, we hold that the trial court's order dismissing Mooney's complaint as to the family care physicians for failure to comply with the Act is against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom.[7] Mooney's proposed complaint for damages is hereby reinstated with respect to the family care physicians.

---

[7] Because we hold that Mooney did not violate the Act, we need not address the family care physicians' contention that they were prejudiced by his conduct.

21

**Issue Two:  Trial Rule 41(E)**

Mooney next contends that the trial court lacked jurisdiction to dismiss his proposed complaint for damages pursuant to Trial Rule 41(E), which provides:

> Whenever there has been a failure to comply with these rules or when no action has been taken in a civil case for a period of sixty [60] days, the court, on motion of a party or on its own motion shall order a hearing for the purpose of dismissing such case.  The court shall enter an order of dismissal at plaintiff's costs if the plaintiff shall not show sufficient cause at or before such hearing.  Dismissal may be withheld or reinstatement of dismissal may be made subject to the condition that the plaintiff comply with these rules and diligently prosecute the action and upon such terms that the court in its discretion determines to be necessary to assure such diligent prosecution.

Mooney maintains that the trial court lacks jurisdiction to dismiss his proposed complaint for damages under Trial Rule 41(E) because he neither failed to comply with a trial rule nor failed to prosecute a civil case.  We must agree.

> As this court explained in Adams, 874 N.E.2d at 1041-42,

> under the Medical Malpractice Act ("the Act"),[] there are three ways a trial court can grant relief before the medical review panel has issued its opinion.  First, Indiana Code section 34-18-11-1(a) states that a trial court has the power to "preliminarily determine an affirmative defense or issue of law or fact that may be preliminarily determined under the Indiana Rules of Procedure" and "compel discovery in accordance with the Indiana Rules of Procedure."  This grant of authority is limited to "deciding issues of law or fact that may be preliminarily determined under Trial Rule 12(D), and compelling discovery pursuant to Trial Rules 26 through 37, inclusively." Griffith v. Jones, 602 N.E.2d 107, 110 (Ind. 1992).

> Second, Indiana Code section 34-18-8-8 permits the Commissioner [of the Indiana Department of Insurance], on the Commissioner's own motion or on the motion of a party, to "file a motion in Marion county circuit court to dismiss the case under Rule 41(E) of the Indiana Rules of Trial Procedure" if action has not been taken on the case for at least two years.

22

Finally, a trial court can grant relief under Indiana Code section 34-18-10-14[.]

Accordingly, here, because a party, and not the Commissioner, moved to dismiss under Trial Rule 41(E), the trial court was without jurisdiction to rule on that motion.

It is well settled that rules of statutory construction require us to construe strictly those statutes which are in derogation of common law against limitations on a claimant's right to bring suit. Weldon v. Universal Reagents, Inc., 714 N.E.2d 1104, 1107 (Ind. Ct. App. 1999). Moreover, when the legislature enacts a statute in derogation of common law, we presume that the legislature is aware of the common law, and does not intend to make any change beyond what is declared in express terms or by unmistakable implication. Id. Statutory procedures for bringing a medical malpractice action are in derogation of common law, and as such, they are to be strictly construed against limiting a claimant's right to bring suit. Id. at 1107-08.

Still, the family care physicians contend that because the trial court ruled on their motion to compel Mooney's answers to the second set of discovery in February 2012, had requested and received a status report from Cline, and "indicated that the court would continue to monitor the proceedings," the trial court "retained jurisdiction over the underlying discovery and failure to prosecute issues." Brief of Appellees at 31. But the family care physicians do not support their assertion with citation to any authority. Moreover, again, the Act is to be strictly construed, and it explicitly restricts a trial court's jurisdiction over a proposed complaint for damages to the three circumstances discussed in Adams, none of which applies here. We hold that the trial court did not have

23

jurisdiction to dismiss Mooney's proposed complaint for damages under Trial Rule 41(E).

## Conclusion

Strohmeyer, the chairperson of the Panel in this matter, consistently advised the parties that he did not intend to set a submission schedule until discovery was completed in this case. When Strohmeyer advised the parties in October 2011 that he had set a submission schedule on the assumption that discovery had been completed, he expressly stated that he would withdraw that schedule if his assumption proved incorrect and discovery had not yet been completed. Cline promptly so advised Strohmeyer, and the submission schedule was, by Cline's letter, withdrawn without objection from any other party. Accordingly, in the absence of a submission schedule and with the chairman's and the parties' understanding that the 180-day deadline would be extended until discovery could be completed, Mooney did not violate the Act. The trial court abused its discretion when it dismissed Mooney's proposed complaint for damages under Indiana Code Section 34-18-10-14. Further, the trial court did not have jurisdiction to dismiss Mooney's proposed complaint for damages under Trial Rule 41(E). Thus, we reverse and reinstate Mooney's proposed complaint for damages against the family care physicians.

Reversed.

BAILEY, J., and BARNES, J., concur.

24