# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Oct 16 2019, 8:25 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Eric A Frey
Frey Law Firm
Terre Haute, Indiana

John P. Nichols
Anderson & Nichols
Terre Haute, Indiana

ATTORNEY FOR APPELLEES
ANONYMOUS M.D. AND
ANONYMOUS LONG-TERM
HOSPITAL

Robert C. Brandt
Riley Bennett Egloff LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS SKILLED NURSING
AND REHABILITATION FACILITY

Melinda R. Shapiro
Laura C. Bonadies
SmithAmundensen LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
ANONYMOUS HOSPITAL

Edna M. Koch
Jennifer A. Padgett
Zeigler Cohen & Koch
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| John Shotts II, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Anonymous Skilled Nursing and Rehabilitation Facility, Anonymous Hospital, Anonymous M.D., Anonymous Long-Term Hospital, <br> *Appellees-Defendants* | October 16, 2019 <br><br> Court of Appeals Case No. 19A-MI-664 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marc Rothenberg, Judge <br><br> Trial Court Cause No. 49D07-1709-MI-36931 |

**May, Judge.**

[1] John Shotts II appeals the trial court's preliminary determination of law dismissing his medical malpractice claims with prejudice. He raises one issue on appeal, which we restate as whether the trial court abused its discretion in dismissing Schotts claims for failure to timely submit evidence to the medical review panel. We affirm.

# Facts and Procedural History

[2] Shotts was admitted to Anonymous Hospital in April 2015 and alleges the hospital negligently treated him. He was transferred from the hospital to

Anonymous Skilled Nursing and Rehabilitation Facility, where he alleges Anonymous M.D. negligently prescribed medication for him. He was subsequently moved to Anonymous Long-Term Hospital, where he alleges the staff continued to give him the negligently prescribed medication. Shotts asserts that, as a result, he suffers from permanent foot drop[1] and kidney problems.

[3]     On March 28, 2016, Shotts filed a proposed complaint with the Indiana Department of Insurance ("IDOI") against Anonymous Skilled Nursing and Rehabilitation Facility, Anonymous Hospital, Anonymous M.D., and Anonymous Long-Term Hospital (collectively, "Defendants"). On April 5, 2016, the IDOI sent a letter to Shotts' attorney notifying him that the Defendants were qualified health care providers under the Medical Malpractice Act ("Act"), Indiana Code Article 34-18, such that Shotts' claims against the Defendants were subject to the terms and procedures of the Act and eligible for compensation from the Patient's Compensation Fund.

[4]     On September 29, 2017, Anonymous Skilled Nursing and Rehabilitation Facility filed a Petition for Preliminary Determination/Motion to Compel on the basis that Shotts had failed to respond to discovery or to the medical review panel chairman's request for Shotts' panel nomination or request for a striking panel. After Shotts responded to discovery and requested a striking panel,

---

[1] For clarity, we note "foot drop" is the inability to lift the front part of the foot, which causes the toes to drag along the ground while walking. *Foot Drop: Causes, Symptoms, and Treatment*, WebMD, https://www.webmd.com/a-to-z-guides/foot-drop-causes-symptoms-treatments (last visited September 24, 2019).

Anonymous Skilled Nursing and Rehabilitation Facility withdrew its motion to compel.

[5]     On February 23, 2018, Richard Kraege, the medical review panel chairman, sent via e-mail a letter notifying counsel of record and the IDOI that the medical review panel would be considered formed as of that date and furnishing a schedule for the submission of evidence. Pursuant to Indiana Code Section 34-18-10-13, the medical review panel had until August 22, 2018, to give its expert opinion.

[6]     Shotts did not tender his evidentiary submission to the medical review panel by the deadline set forth in Kraege's letter of February 23, 2018. On May 16, 2018, Kraege sent a letter to Shotts' counsel via e-mail inquiring when Shotts' submission would be forthcoming. Kraege sent additional letters to Shotts' counsel via e-mail on June 14, 2018; July 10, 2018; and August 23, 2018. Shotts' counsel did not respond to these e-mails until August 28, 2018, when Angela Bullock, an attorney at the firm representing Shotts, e-mailed Kraege. Bullock acknowledged receipt of the letter of August 23, 2018, and stated: "We have had a change in staff and unfortunately that change has put me a little behind in getting the submission materials to you. I hope to get the materials to you within the next couple weeks and will keep you advised if that changes." (Appellant App. Vol. II at 41.) On September 13, 2018, Bullock sent another e-mail to Kraege inquiring about the format in which to send the submission. Bullock did not copy opposing counsel on either of these e-mails to Kraege.

Thus, opposing counsel was unaware of these communications and could not respond to or opine on them.

[7] On September 20, 2018, an attorney for Anonymous Long-Term Hospital and Anonymous M.D. e-mailed Kraege and Rosie Perez, Kraege's Legal Administrator, seeking to confirm Shotts had not tendered his submission or requested additional time. In response, Perez forwarded the correspondence between Bullock and Kraege to all counsel of record because counsel for Defendants had not been copied on the original e-mails. Perez noted that Bullock intended to tender the Plaintiff's submission on Monday, September 24, 2018. Bullock replied to everyone included on Perez's e-mail and said she was planning to mail the submission that night. Bullock tendered the submission on September 20, 2018.

[8] Also, on September 20, 2018, in the trial court, Anonymous Long-Term Hospital and Anonymous M.D. moved for a Preliminary Determination of Law ("PDL") seeking dismissal of Shotts' case pending before the IDOI. All the other defendants later joined the motion. Shotts responded to the PDL, Anonymous M.D. and Anonymous Long-Term Hospital filed a reply, and Shotts filed a supplemental affidavit in response.

[9] The Court held a hearing on January 17, 2019. At the hearing, Shotts' counsel acknowledged his firm "dropped the ball" and said: "But we had a change in staff and once we realized we dropped the ball, we got on it right away. The only thing we didn't do that we should have done is copy counsel when we

communicated with Mr. Kraege." (Tr. Vol. II at 20.)[2] He also noted at the hearing that "from a practical standpoint, these cases are almost never decided in 180 days." (*Id*. at 20-21.) When the trial court asked Shotts' counsel why he should not dismiss Shotts' claims, Shotts' counsel replied:

> I guess the good cause would be that as soon as we realized we had a problem, we attempted to remedy the situation and we did communicate with Mr. Kraege and he voiced no objection to the extension of time. So I guess in my opinion, that's the good cause.

(*Id*. at 22.)[3] On February 22, 2019, the trial court issued an order dismissing Shotts' claims with prejudice. The trial court found Shotts failed to show good cause for the delay in his submission.

# Discussion and Decision

[10] Whether to sanction a party for failure to timely submit evidence to the medical review panel in accordance with the Act "is a question of law and fact that may be preliminarily determined by the trial court in the exercise of its discretion after a hearing." *Mooney v. Anonymous M.D. 4*, 991 N.E.2d 565, 575 (Ind. Ct.

---

[2] While not explicitly stated in the record, we infer from briefing that the "change in staff" is the departure of a paralegal from the office of Shotts' legal counsel.

[3] Shotts' counsel also argued at the trial court hearing that the issue was moot because, while late, Shotts did eventually file his submission with the medical review panel. This argument is not presented on appeal, and we consider it abandoned. *Lake Cty. v. State ex rel. Manich*, 631 N.E.2d 529, 537 n.4 (Ind. Ct. App. 1994) (holding statutory argument raised before the trial court was abandoned on appeal when party focused on other arguments in its appellate brief), *reh'g denied*.

App. 2013), *reh'g denied*, *trans. denied*.   We review such decisions for an abuse of discretion.  *Id*. at 576.  "An abuse of discretion exists when the trial court's decision is clearly against the logic and effect of the facts and circumstances before it or the reasonable, probable, and actual deductions to be drawn therefrom."  *Id*.  But, "[m]atters of statutory interpretation present a pure question of law to which we apply a de novo standard of review."  *Tyms-Bey v. State*, 69 N.E.3d 488, 489 (Ind. Ct. App. 2017), *reh'g denied*, *trans. denied*.

[11]   Initially, we note it is the plaintiff's responsibility to prosecute his case.  *See* Ind. Trial Rule 41(E) (directing court to dismiss case after lengthy period of inactivity if plaintiff fails to show sufficient cause for the delay).  In support thereof, the Act contains several statutes designed to encourage prompt disposition of cases.  For example, Indiana Code Section 34-18-10-3(c) directs the chairman of the medical review panel to "expedite the panel's review of the proposed complaint" and gives the chairman authority to "establish a reasonable schedule for submission of evidence to the medical review panel but must allow sufficient time for the parties to make full and adequate presentation of related facts and authorities."  Furthermore, "[t]he panel shall give its expert opinion within one hundred eighty (180) days after the selection of the last member of the initial panel."  Ind. Code § 34-18-10-13.  If the panel does not render an expert opinion within 180-days, then the panel shall submit a report to the commissioner of the IDOI explaining the reasons for the delay.  *Id*. Indiana Code Section 34-18-10-14 states that a "party, attorney, or panelist who fails to act as required by this chapter without good cause shown is subject to

mandate or appropriate sanctions upon application to the court designated in the proposed complaint as having jurisdiction."

[12]    Furthermore, Indiana Code Section 34-18-0.5-1, which became effective on July 1, 2017, states:

> The general assembly emphasizes, to the parties, the courts, and the medical review panels, that adhering to the timelines set forth in this article is of extreme importance in ensuring the fairness of the medical malpractice act. Absent a mutual written agreement between the parties for a continuance, all parties subject to this article, and all persons charged with implementing this article, including courts and medical review panels, shall carefully follow the timelines in this article. No party may be dilatory in the selection of the panel, the exchange of discoverable evidence, or in any other matter necessary to bring a case to finality, and the courts and medical review panels shall enforce the timelines set forth in this article so as to carry out the intent of the general assembly.

Shotts argues that he demonstrated good cause for his late submission and that dismissal was too harsh a sanction for the trial court to impose. Defendants rely on the above statutes to argue that Shotts' claims should be dismissed because the parties never executed a written mutual agreement to extend the deadlines and Shotts failed to establish good cause for his failure to adhere to the deadlines established by the Act and as set by Kraege.

[13]    As our Indiana Supreme Court has observed, "Indiana law has long incorporated a strong preference for deciding cases on their merits rather than disposing of them via procedural technicalities." *Miller v. Dobbs*, 991 N.E.2d

562, 565 (Ind. 2013). Nevertheless, we must determine and abide by the legislature's intent in interpreting a statute. *Ind. Alcohol & Tobacco Comm'n v. Spirited Sales, LLC*, 79 N.E.3d 371, 376 (Ind. 2017). If a statute's language is clear and unambiguous, we "will not apply any rules of construction other than to require that words and phrases be given their plain, ordinary, and usual meanings." *Dykstra v. City of Hammond*, 985 N.E.2d 1105, 1107 (Ind. Ct. App. 2013), *trans. denied*. We interpret the statute such that every word is "given effect and meaning, and no part is to be held meaningless if it can be reconciled with the rest of the statute." *Guzman v. AAA Auto Rental*, 654 N.E.2d 838, 840 (Ind. Ct. App. 1995).

[14] Indiana Code Section 34-18-0.5-1 explicitly directs courts, parties, and medical review panels to follow the timelines provided in the Act. As we recently explained, "[i]t is apparent, therefore, that the general rule is that [the Act's] timelines—including submission schedules created by the medical review panel—must be carefully and strictly followed." *Quillen v. Anonymous Hosp.*, 121 N.E.3d 581, 587 (Ind. Ct. App. 2019) (holding trial court did not err in dismissing proposed medical malpractice complaint when plaintiff failed to comply with panel's submission schedule, object to the schedule, or request an extension of time and plaintiff's counsel did not give a reason for the delinquency until his response to defendants' motion to dismiss), *trans. denied*. It is not disputed that Shotts failed to make his submission before the deadline set by the chair of the medical review panel. Further, the parties did not enter into a mutual written agreement to continue or extend the 180-day deadline for

the medical review panel to render its expert opinion.  Nor did Shotts contact the medical review panel chairman before the 180-day deadline expired.

[15]  Therefore, pursuant to Indiana Code Section 34-18-10-14, we must determine whether the trial court abused its discretion in finding Shotts failed to show good cause for his failure to comply with the Act's timelines and sanctioning him accordingly.  Shotts argues his case is like *Mooney v. Anonymous M.D. 4*.  In *Mooney*, the plaintiff filed a proposed medical malpractice complaint with IDOI.  991 N.E.2d at 568.  The defendants had difficulties getting written discovery responses from the plaintiff and the plaintiff had trouble setting up depositions of the defendants.  *Id*. at 570-75.  A medical review panel was formed, but plaintiff failed to make a submission for more than 180 days after formation of the panel.  *Id*.  The defendants moved to dismiss the plaintiff's proposed complaint, in part, on the basis that plaintiff failed to comply with the Act.  *Id*. at 575.  The trial court granted the defendants' motion.  *Id*.  We noted that the Act's 180-day deadline is not a statute of limitations and failure of the panel to produce its expert opinion in that time is not automatically grounds for sanctions. *Id*. at 578.  We reversed the trial court because plaintiff's counsel did not sit idly by and do nothing.  *Id*. at 579.  Plaintiff's counsel kept the chair of the medical review panel informed that discovery was ongoing, sent multiple letters attempting to set dates for depositions, and defendants' counsel stated in writing that she was amendable to an extension of the 180-day deadline "if necessary."  *Id*. at 578.

[16] However, we find the case at bar distinguishable from *Mooney*. Notably, *Mooney* was decided before Indiana Code Section 34-18-0.5-1 became effective. Additionally, in *Mooney*, counsel for the parties communicated with each other and the chairman of the medical review panel regarding the completion of discovery. Shotts wholly failed to communicate with defense counsel or the chairman of the medical review panel until after expiration of the 180-day deadline. And, when Shotts communicated with the chairman of the medical review panel, he failed to copy defense counsel on the correspondence and he communicated through an attorney who had not entered her appearance in the case.

[17] Shotts also analogizes his case to *Beemer v. Elsking*, 677 N.E.2d 1117 (Ind. Ct. App. 1997*), reh'g denied*, *trans. denied*, in arguing that a staffing change constitutes good cause for his late submission and that Krague implicitly granted Shotts' an extension of time. In *Beemer*, we held the trial court abused its discretion in dismissing the plaintiff's complaint for failure to make his submission to the medical review panel when plaintiff made his submission five days after the 180-day deadline and, in the months leading up to the deadline, plaintiff's counsel's caseload increased as the result of two associates leaving his firm, he tried a two-week reckless homicide jury trial, tried another two-day jury trial, participated in the mediation of six cases, attended four continuing legal education seminars, and took a vacation around the holiday season. *Id*. at 1119-21. We also noted the chair of the medical review panel implicitly granted the plaintiff in *Beemer* an extension of time when the chair of the medical review

panel sent a letter acknowledging a phone conversation in which plaintiff's counsel stated the submission would be late and evidence was presented that plaintiff's counsel provided the submission as soon as practicable. *Id.* at 1120.

[18] However, Shotts' argument that Krague implicitly granted him an extension of time is not well founded. Like *Mooney*, *Beemer* was decided before passage of Indiana Code Section 34-18-0.5-1. We presume the legislature is aware of existing law when enacting legislation. *Gallagher v. Marion Cty. Victim Advocate Program, Inc.*, 401 N.E.2d 1362, 1365 (Ind. Ct. App. 1980). The plain language of the statute allows extension of the 180-day deadline only upon mutual written agreement of the parties. Ind. Code § 34-18-0.5-1 ("*Absent a mutual written agreement between the parties* for a continuance, all parties subject to this article, and all persons charged with implementing this article, including courts and medical review panels, *shall* carefully follow the timelines in this article[.]" (emphases added)). A mutual written agreement extending the 180-day deadline was not executed in this case.

[19] Nevertheless, Shotts' case differs from *Beemer* in other ways. Shotts contends his late submission resulted from a staffing change, but he does not specify exactly how the staffing change impacted law firm operations so significantly that he could not comply with the original submission deadline, contact the chair of the medical review panel, request an extension of time before expiration of the 180-day deadline, or respond to Kraege's first three letters

asking about the status of Shotts' submission.[4] Shotts' counsel also fails to specify what, if any, changes he made to ensure that similar missteps do not happen in the future.

[20] Shotts argues the defendants were not prejudiced by his late submission. He notes that while a major health insurance provider initially deemed defendant Anonymous M.D. unable to be considered "in-network" due to too many outstanding claims, that decision was eventually overturned, and the initial decision was made before expiration of the 180-day deadline. (Appellant Br. at 18.) Defendants maintain that having long standing open medical malpractice claims is inherently prejudicial. Nonetheless, whether (or to what degree) Defendants were prejudiced is not dispositive. *See Reck v. Knight*, 993 N.E.2d 627, 634 (Ind. Ct. App. 2013) (trial court may consider the degree of prejudice to the defendants in evaluating the appropriate sanction, but party requesting sanctions is not required to show prejudice), *trans. denied*.

[21] While Shotts argues a sanction short of dismissal would be more suitable, we have previously held that dismissal is an appropriate sanction for failure to timely make a submission to the medical review panel. *See, e.g., Rambo v. Begley*, 796 N.E.2d 314, 322 (Ind. Ct. App. 2003) (trial court did not abuse its discretion in dismissing plaintiff's complaint for failure to timely submit

---

[4] "It is the duty of an attorney to regularly check the court records and monitor the progress of pending cases." *Patton Elec. Co., Inc. v. Gilbert*, 459 N.E.2d 1192, 1194 (Ind. Ct. App. 1984); *see also* Ind. Professional Conduct Rule 1.3 ("A lawyer shall act with reasonable diligence and promptness in representing a client").

evidence to the medical review panel when plaintiff failed to diligently pursue discovery or request more time to make his submission); *Galindo v. Christensen*, 569 N.E.2d 702, 705 (Ind. Ct. App. 1991) (statutes directing the chair of the medical review panel to set up a schedule for the submission of evidence and giving the panel 180-days to render an expert opinion imply a "corresponding duty upon the parties to comply with the schedule, if one is set by the chair, and upon the parties and the panel to comply with the 180 day limit; an available remedy for any breach is court-ordered sanctions").

[22] Most recently, in *Reck*, the plaintiff filed a proposed complaint with the IDOI. *Id*. at 629. The chairman of the medical review panel notified the parties when the panel was formed and set an evidence submission schedule. *Id*. The plaintiff did not file her evidentiary submission by the deadline and did not respond to a letter from the chair of the medical review panel asking when her submission would be forthcoming. *Id*. After the 180-day deadline for the panel to render an expert opinion had passed without plaintiff making her submission, the defendants moved for a PDL seeking dismissal of plaintiff's complaint for failure to timely file her submission with the medical review panel. *Id*. We affirmed the trial court's dismissal of plaintiff's complaint on the basis that plaintiff failed to demonstrate good cause for her failure to timely submit her evidence to the medical review panel. *Id*. at 634-35.

[23] Shotts attempts to distinguish his case from *Reck*. He notes the plaintiff in *Reck* filed her submission two days before the hearing on a motion to dismiss and her only explanation for the delay in submission was that the records were

voluminous. 993 N.E.2d at 629-30. Shotts mailed his submission on the day Anonymous Long-Term Hospital and Anonymous M.D. moved to dismiss and blames the late submission on a change of staff. Shotts also points out that, in *Galindo*, we remanded the matter back to the trial court because the plaintiff was not afforded a hearing. 569 N.E.2d at 706. However, this argument highlighting the factual differences between Shotts' case and *Reck* is unpersuasive and the factual similarities between Shotts and the plaintiffs in *Reck* and *Quillen* are striking. All three failed to make their submission to the medical review panel on time, to obtain an extension of time to make such a submission, to respond when the panel chairman initially contacted them regarding the late submission, and to demonstrate to the trial court good cause for the late submission. Unlike the plaintiff in *Galindo*, Shotts was afforded a hearing and a chance to demonstrate to the trial court good cause for the delayed submission.

[24] Shotts was neglectful throughout prosecution of this action. Before the medical review panel was even formed, Shotts failed to respond to discovery or the panel chairman's request for Shotts' nomination to the medical review panel. Shotts acted only after one of the defendants filed a motion to compel. Shotts did not meet the initial deadline for his submission. Shotts did not reply to the first three letters from the chairman asking about the status of Shotts' submission, and he responded five days after the fourth letter from the chairman. Shotts' response was after the deadline established by Indiana Code Section 34-18-10-13 for the medical review panel to render its expert opinion.

Shotts did not copy opposing counsel or ask for an extension of time. Rather, Shotts' counsel simply indicated that there was a staffing change and she hoped to file plaintiff's submission soon. Given these facts and circumstances, the sanction of dismissal was well within the trial court's discretion. *See Jones v. Wasserman*, 656 N.E.2d 1195, 1197 (Ind. Ct. App. 1995) (holding trial court did not abuse discretion in dismissing action after plaintiff failed to submit evidence to medical review panel prior to deadline for submission or seek an extension of time to do so), *trans. denied*.

# Conclusion

We cannot say the trial court abused its discretion in dismissing Shotts' complaint. The sanction of dismissal was not clearly against the logic and effect of the facts and circumstances before the trial court given Shotts' lack of communication with the panel chair and opposing counsel, and given Shotts' presentation of scant evidence to demonstrate how a staffing change at counsel's office caused such a lengthy delay in his submission of evidence. Therefore, we affirm.

Affirmed.

Vaidik, CJ., and Bailey, J., concur.